LETTS-SPENCER GROCERY- COMPANY, Respondent, v. MISSOURI PACIFIC RAILWAY COMPANY, Appellant.

Kansas City Court of Appeals, November 1, 1909.

1. **GARNISHMENT: Custodia Legis.** The service of summons in garnishment, under sections 5278 and 5282, General Statutes of Kansas, 1901, places property of defendant in the hands of the garnishee, *in custodia legis* from the time of such service.

2. ————: **Stoppage in Transitu.** If notice upon a carrier to stop goods in transit is given after service of notice in garnishment, the carrier no longer holds the goods as a carrier but as an officer of the court.

Appeal from Buchanan Circuit Court.—*Hon. H. M. Ramey,* Judge.

REVERSED.

*Martin L. Clardy & Benj. J. Woodson* for appellant.

From this agreed statement it will be seen that there is but one single question for the court to decide, viz.: Did the service of the summons of the writ of garnishment on appellant, November 29, 1907, place the goods in controversy, from that time "in the custody of the law," or *"in custodia legis?"* If it did, then this case should be reversed; if it did not, it should be affirmed. Both reason and authority, support appellant's contention. "By the weight of authority the service of the garnishment summons places the property in the garnishee's hands, substantially *"in custodia legis."* Rood on Garnishments, 1896 Edition, section 194. So it has been held, that garnishment, has the effect to place the property in the garnishee's hands, "in the custody of the law." Drake on Attachments, 5th Edition, Section 251; and Judge Marshall in the case of Brashear v. West, 7 Peters U. S. 608, or 10 Curtis l. c. 602, said in a garnish-

ment case: "Still the property was 'in the custody of the law.'" While holding the goods at the end of the transportation for delivery to the consignee the carrier may be garnisheed therefor. 6 Cyc. Law and Procedure, 462; Cooley v. Minn. Transportation Ry. Co., 53 Minn. 327, 55 N. W. 141. "Every man holds his property subject to be attached, and whenever property is attached in a suit against the owner and taken into 'the custody of the law' it excuses the person having possession of it from performing his promise, express or implied, to deliver to the owner." Landa v. Holck & Co., 129 Mo. 1. c. 671-672. "A railway company, after transporting property to destination, and while holding same, is liable to garnishment in respect to such property." Cooley v. Railway, 53 Minn. 327, 55 N. W. 141.

*Culver & Phillip* for respondent.

All the authorities agree that the right of stoppage *in transitu* is nothing but an extension of the vendor's lien on the goods for the payment of the purchase money. Schwabacher v. Kane, 13 Mo. App. 126, 1. c. 129; 26 Enc. Law (2 Ed.) 1117. And this lien and therefore the right to stop the goods and reclaim them continues until they have been actually received by the vendee. Schwabacher v. Kane, 13 Mo. App. 126; Estey & Camp v. Truxall, 25 Mo. App. 238; 26 Enc. Law (2 Ed.) 1091. The law is, therefore, that "the right of stoppage is not defeated by the seizure of the goods before delivery to the buyer under attachment proceedings instituted by the buyer's creditors, nor by seizure under an execution against the buyer." This is the law in Kansas and Missouri. Sims v. Schotten, 35 Kan. 310; Rucker v. Doniphan, 13 Kan. 251; Estey & Camp v. Truxall, 25 Mo. App. 238; Schwabacher v. Kane, 13 Mo. App. 126. And it is also the case in every State in the Union in which the question has arisen. Bayonne v. Umben-

hauer, 107 Ala. 496; Mason v. Wilson, 43 Ark. 172; Aguirre v. Parmalee, 22 Conn. 473; Greve v. Dunham, 60 Ia. 106; 26 Enc. Law (2 Ed.) 1113, cases cited. Sections 4949, 4953, 5094, General Statutes of Kansas (Dassler, '05), afforded the railroad the opportunity to compel the plaintiff in this case and the plaintiff in the attachment to interplead for the property in its possession. Ferguson v. Bank, 25 Kan. 232. There is no danger that the garnishee will be compelled to pay his liability more than once. Our statute makes ample provisions for his protection; and if he neglects to avail himself of those provisions while the attachment proceedings are pending, it is no hardship to compel him to defend himself upon the merits in a suit by a claimant who has not been made a party to those proceedings. Wilson v. Murphy, 45 Mo. 409.

JOHNSON, J.—Plaintiff sued defendant in the circuit court of Buchanan county for damages for the alleged wrongful conversion of certain goods, wares and merchandise. A jury was waived, the cause was submitted to the court on an agreed statement of facts, and judgment was rendered for plaintiff in the sum of $405.63, the value of the property. Defendant appealed.

Plaintiff, a wholesale merchant at St. Joseph, sold the goods in question to the W. C. Ross Construction Company of Stockton, Kansas, and delivered them to defendant at St. Joseph for transportation to Stockton. They arrived at Stockton November 29, 1907, and were unloaded into defendant's depot at that place. The Construction Company was insolvent at the time of the sale, but that fact was not known to plaintiff until December 9th. On November 29th, the day of the arrival of the goods at Stockton and while they were still in the possession of defendant, a creditor of the Construction Company brought suit on a demand against that company before a justice of the peace at Stockton and caused a garnishment summons to be issued and served

on defendant. On December 9th, plaintiff notified defendant in writing of its purpose to exercise the right of stoppage *in transitu,* offered to pay defendant's charges and demanded the goods. The demand was refused and this suit followed.

The plaintiff in the garnishment suit in Kansas, recovered judgment against the Construction Company for $174.66 and costs. Defendant answered as garnishee, stating that it held the goods but that their vendor (plaintiff here) had exercised the right of stoppage *in transitu.* Notwithstanding this defense, the justice ordered defendant to deliver the goods to the constable on the payment by that officer of the freight charges, amounting to $26.66. Compliance with this order being refused by defendant, the attachment plaintiff brought a statutory action against defendant in Rooks county, Kansas, based on the order. Defendant answered, claiming that the notice by the plaintiff in the present suit of the exercise of its right of stoppage *in transitu* excused defendant from obeying the order made by the justice. The issues thus raised were tried in the district court of Rooks county, a court of record of general jurisdiction, and submitted to the court, but at the time of the present suit judgment had not been rendered in that action. Plaintiff was asked by defendant to intervene in the Kansas suits but did not comply with the request and was not made a party to either suit. The statutes of Kansas and decisions of the Supreme Court of that State bearing on the issues before us were introduced in evidence.

In support of its contention that the facts above stated compel a judgment in its favor, defendant argues that the effect of the service on defendant of the garnishment summons was to impound the property, to place it in the custody of the law, and to make defendant its custodian, subject to the orders of the Kansas court; therefore, that defendant was disabled by law from complying with the demand of plaintiff to return the

goods and being thus disabled, cannot be held to have converted the property on account of having done that which the law compelled it to do. On the other hand, plaintiff argues that its right of stoppage *in transitu* gave it a lien on the goods for the purchase price, superior to any lien a creditor of the vendee could acquire by attachment or garnishment; that this lien and the right to enforce it were in force at the time of the gargarnishment summons, since they would not be lost until actual delivery of the property to the vendee and, being thus in force, the right was not impaired by the garnishment of the carrier, but could be exercised and enforced against the carrier, regardless of an action brought to subject the property to the payment of the debts of the vendee to third persons.

Pertinent provisions of the statutes of Kansas relating to garnishment proceedings in justice's courts are as follows:

"An order of attachment binds the property attached from the time of service, and the garnishee shall stand liable to the plaintiff in attachment for all property, moneys and credits in his hands, or due from him to the defendant, from the time he is served with the written notice mentioned in section thirty-seven." [Section 5278, Gen. Stat. of Kansas (Dassler) 1901.]

"A garnishee summons shall be issued and personally served, in the same manner as an ordinary summons and from the time of such service the garnishee shall stand liable to the plaintiff for all property, money and articles in his hands or due from him to the defendant." [Section 5282, Gen. Stat. Kansas, 1901.]

The effect of these statutes is to place *in custodia legis* the property of the defendant in a garnishment suit from the time of the service of notice on the garnishee. [Rood on Garnishments (1896 Ed.), sec. 194; Drake on Attachments (6th Ed.), sec. 251.] In legal effect, the property came under the control of the Kansas court as completely as would have been the case had

the officer of the court seized it under writ of attachment, the only difference being that in the latter case the constable would have held the property as legal custodian, while in the case in hand, the defendant, on the service of notice, ceased to hold it as a common carrier and, thereafter, held it as the court's custodian.

This brings us to the question of whether a vendor may enforce his right of stoppage *in transitu* before the goods have been actually delivered by the carrier to the vendee, but after they have been seized by an officer of the court under writ of attachment issued in a suit of a creditor of the vendee, or, what is practically the same thing, after they have been impounded by service on the carrier of a garnishment summons. "All authorities agree that the right of stoppage *in transitu* is nothing but an extension of the vendor's lien on the goods for the payment of the purchase money." [Schwabacher v. Kane, 13 Mo. App. 126.]

"The transit is held to continue from the time the vendor parts with the possession until the purchaser acquires it; that is to say, from the time the vendor has so far made delivery that his right of retaining the goods and his right of lien . . . are gone, to the time when the goods have reached the actual possession of the buyer. . . . The stoppage *in transitu* is called into existence for the vendor's benefit, after the buyer has acquired title and right of possession and even constructive possession, but not yet actual possession . . . and the insolvency of the purchaser is a sufficient justification for exercising the seller's right, though the sale be unconditional and time be given to the purchaser. This right of stoppage is not precluded until the goods have actually reached the buyer, or under circumstances equivalent thereto." [Estey v. Truxel, 25 Mo. App. 238.]

The right is based on the equitable rule that one man's property shall not be taken to pay another man's debt. It arises from the discovery by the vendor during

the transitus of the insolvency of the vendee and the ordinary effect of its exercise is "to vest in each party to the contract of sale the rights he had before the possession of the goods sold was delivered to the carrier." [Milling Co. v. Railway, 66 N. W. Rep. 1059.] "The unloading of the goods, and the placing of them in the warehouse of the railroad company, does not necessarily terminate the transitus nor put an end to the right of stoppage; so long as they remain in the hands of the carrier or middle-men as such, the right does not cease." [Symns v. Schotten, 10 Pac. Rep. (Kan.), 828.] The application of these rules to the facts in hand compels the holding that at the time of the service of the garnishment summons on the defendant, the right of stoppage was vested in plaintiff and could not be destroyed or impaired by any process issued at the suit of a creditor of the vendee. Further, we agree with plaintiff that "after a notice of stoppage has been given, the seller may enforce his right of possession thereupon accruing by intervention in the attachment proceeding, by interpleader to determine the rights of the parties, or by an appropriate action against the officer who levied the writ, or jointly against the creditor and the officer, *or against the carrier or middleman who has refused on account of the attachment to redeliver the goods to the seller."*

But, obviously, the remedy we have italicized, which is the one sought to be enforced in the present case, would not obtain if, at the time of the service on the carrier of notice to stop the goods, the carrier no longer holds them as a common carrier but has been transformed into an officer of the court and holds them as the custodian of the court. Plaintiff concedes in his brief that "if the officer actually seizes the goods and takes them out of the possession of the railroad company and into his own possession under the writ of attachment, or execution, then replevin must be brought

against the officer because such action must be brought against the person in possession."

So in the present case, when the notice of stoppage was served by plaintiff, the property passed out of the possession of the defendants as a carrier into the custody of the law. "After the seizure of the goods by the sheriff under the attachment, they were in the custody of the law and the defendant could not comply with the demand of plaintiffs without a breach of it, even admitting the goods to have been at the time in his actual possession." [Stiles v. Davis, 66 U. S. 101.] Holding the goods as the receiver or officer of the court, as it did, how could defendant accede to the demand of plaintiff without violating its duty to the court? It was compelled by sovereign power to hold the goods subject to the orders of that power and its obedience to the command of sovereignty was its first duty. It was not guilty of the conversion of the goods for the simple reason that it exercised no control of its own over them, but, as we have seen, merely held them as the instrument of a higher power to which it owed obedience. The right that inured to plaintiff was not lost or impaired by the service of the garnishment on defendant, but the particular remedy now sought to be enforced was lost by the jurisdiction assumed by the Kansas courts over the *res* to which the lien attached. Defendant committed no wrong against any right of plaintiff and, consequently, cannot be held liable as a wrongdoer.

The judgment is reversed. All concur.


BROADDUS, P. J., ON REHEARING.

A rehearing was granted in this case because of the importance of the legal questions involved, and the possibility that the former decision might be erroneous. But after a careful consideration of the case anew, we

are satisfied that there can be no question but what the decision correctly states the law; and that it results in justice as well.

Reversed. All concur.